OPINION OF THE COURT
Per Curiam.
Respondent Richard H. Zweig was admitted to the practice of law in the State of New York by the First Judicial Department on July 9, 1984 as Richard Henry Zweig. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Judicial Department.
The Departmental Disciplinary Committee initiated a sua sponte investigation against respondent after he testified as a mitigation witness in a disciplinary proceeding concerning attorney Mac Truong (Matter of Truong, 22 AD3d 62 [1st Dept 2005], appeal dismissed 6 NY3d 799 [2006]).
The Committee’s investigation focused on respondent’s participation, between 2000 and 2007, in various state and federal actions in which he purportedly represented the government of Vietnam at Truong’s direction. Specifically, the litigation concerned assets that had been frozen in the United States when Vietnam nationalized 10 shipping companies that were doing business collectively under the name Vishipco. After Vishipco was nationalized, Vietnam changed the name to Vitranschart.
On or about July 15, 2009, the Disciplinary Committee served respondent with a notice and statement of charges alleging *98 that: by commencing and prosecuting unauthorized and fraudulent litigation in New York state and federal court, purportedly on behalf of the government of Vietnam, he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (charge one) and in conduct that was prejudicial to the administration of justice in violation of DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) (charge two); by giving false testimony in the disciplinary proceeding Matter of Mac Truong on May 20, 2004, respondent violated DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (charge three) and DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) (charge four); by giving false testimony at his sworn deposition before the Committee in September 2008 and February 2009, he violated DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (charge five) and DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) (charge six); by failing to make an application before Judge Crotty to dismiss Truong’s counterclaims against respondent’s purported client, he intentionally prejudiced or damaged his client in violation of DR 7-101 (a) (3) (22 NYCRR 1200.32 [a] [3]) (charge seven); by commencing unauthorized and fraudulent legal actions against Charles Schwab, former Vishipco shareholders, and their counsel, respondent took legal action intended solely to harass and/or maliciously injure another in violation of DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]) (charge eight); and by engaging in the above misconduct, respondent engaged in conduct that adversely reflected on his fitness as a lawyer in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (charge nine).
In August 2009, respondent served an answer denying the charges. During October and November 2009, a referee held seven days of hearings on the charges. On January 6, 2010, the Referee issued a 43-page report of his “Initial Findings of Facts” wherein he found, among other things, that respondent testified falsely and conspired with Truong to use litigation improperly, and that respondent was “a puppet and Mac Truong was his puppeteer” who directed various fraudulent conduct along the way.
Following the parties’ submissions of memoranda, wherein respondent requested reconsideration of the Referee’s findings on the charges, the Referee issued a report on March 15, 2010 denoted “Notice of Charges Sustained,” in which he sustained eight out of nine charges, having not sustained charge seven (intentionally prejudicing or damaging his client in violation of *99 DR 7-101 [a] [3] [22 NYCRR 1200.32 (a) (3)]). Respondent admitted only to charge nine, that he engaged in conduct that adversely reflects on his fitness as a lawyer (DR 1-102 [a] [7] [22 NYCRR 1200.3 (a) (7)]). A sanction hearing was held on March 22 and on April 19, 2010, the Referee issued his final report and recommended disbarment.
After hearing oral argument, a Hearing Panel issued a report dated October 20, 2010, where it agreed with the Referee’s findings and recommendation of disbarment.
The Disciplinary Committee now moves for an order pursuant to Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (2) confirming the report of the Referee and the determination of the Hearing Panel, and disbarring respondent from the practice of law. Respondent argues that disbarment is disproportionate to the non-venal conduct involved and requests a sanction between a censure and a one-year suspension.
In finding respondent guilty of commencing and prosecuting unauthorized and fraudulent litigation in state and federal court purportedly on behalf of the government of Vietnam (charges one and two), the Referee held that respondent
“engaged over many years in an intentional course of conduct involving repeated instances of dishonesty, fraud, deceit and misrepresentation, lying both to the Court and to his putative client about the true nature of the litigation brought at the instance of, and primarily for the benefit of, Mac Truong . . . [S]uch conduct is prejudicial to the administration of justice.”
In sustaining charges three through six, the Referee found that respondent testified falsely at Truong’s 2004 disciplinary proceeding, and testified falsely in his own deposition before the Committee in 2008 and 2009, when he denied that he colluded with Truong in connection with the Vitranschart litigation.
The Referee did not sustain charge seven (intentionally prejudicing or damaging his client in violation of DR 7-101 [a] [3] [22 NYCRR 1200.32 (a) (3)]), having determined that although respondent did intentionally fail to move to dismiss the counterclaims against Vitranschart when invited to do so by the federal court, “because [respondent] was still working with Mac Truong to use that litigation for improper purposes,” he did not believe that failure established that respondent intentionally or actually prejudiced or damaged his client. In sustaining charge *100 eight, the Referee found that respondent’s conduct “served merely to harass or maliciously injure Charles Schwab and the Vishipco Entities and their lawyer” in violation of DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]). And, as noted above, respondent admitted to charge nine, a violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
The Referee summarized respondent’s conduct as follows:*
“Respondent engaged in an intentional fraud on multiple state and federal courts over a multiyear period in order to help Mac Truong pursue vexatious litigation against the Vishipco Entities and Charles Schwab. He then lied in his testimony at Mac Truong’s disciplinary hearing, and when deposed by the Disciplinary Committee Staff as part of their investigation of Respondent himself, regarding the true nature of his representation of Vietnam. . . .
“In order to assist Mac Truong’s goal of holding on to Vishipco’s assets, Respondent filed an unnecessary federal lawsuit (Federal Action #2) without the permission of his putative client, the government of Vietnam. He did so, he claims, in reliance on the vague instructions of an unnamed employee of a Vietnamese shipping company to ‘protect our interests’ until the Embassy could decide whether to retain him. . . .
“The real reason for the rush to start a new lawsuit was to try to help Mac Truong delay the long-form accounting ordered by Justice Cozier. Mac Truong’s own federal lawsuit (Federal Action #1) had been stayed pending the outcome of the state case, and so Mac Truong required another mechanism by which to avoid discovery and delay Justice Cozier. The fact that Respondent did not file a related case statement with Federal Action #2 is consistent with the picture of forum shopping at the direction of Mac Truong . . . The fact that one of Respondent’s first acts after filing Federal Action #2 was to ask U.S. District Judge Stein to enjoin the state action—a motion which solely benefitted Mac Truong—is fur *101 ther proof that the real purpose was to assist Mac Truong in pursuing vexatious litigation, rather than to represent Vietnam honestly.”
Additional examples of respondent’s handling of the litigations in a manner that assisted Truong but was not in the best interest of his putative client include that: the language of the complaint in federal action No. 2 (and most other documents) was consistent with Mac Truong’s own writing and entirely inconsistent with respondent’s; he made an incomprehensible summary judgment motion asking the federal court to “certify facts” which were drafted to benefit Truong to stave off the state court; he joined in baseless attacks on Vishipco’s attorney, David Levy, including moving for his disqualification, which was consistent with Truong’s long-running “vendetta” against Levy; and he “consistently failed to fully and accurately inform his client of the true nature of the litigation.”
With respect to whether respondent had in fact been authorized to represent Vietnam, the Referee concluded as relevant:
“[i]n the absence of a witness from Vietnam to contradict his testimony, I find that Mac Truong and Respondent in fact met with the Ambassador [of Vietnam] . . . and that Respondent obtained some measure of authority to appear in court on behalf o[f] Vietnam. However, in light of Respondent’s subsequent actions and the way his correspondence is crafted to avoid fully and accurately informing the Vietnamese government of the salient facts, I find that this meeting was part of Respondent’s agreement with Mac Truong to use Vitranschart as a pawn in Mac Truong’s battles with the Vishipco entities.”
In mitigation respondent offered, among other things, his lack of a disciplinary history; the absence of a venal motive and, in fact, that he lost money insofar as he took the case on a one-third contingency basis and failed to obtain any recovery; his client was not harmed; his good reputation in the legal community as testified to by two character witnesses (one who skimmed the voluminous record and the other who declined counsel’s offer to do so before the hearing); that a suspension or disbarment would irreparably harm his low-income immigrant clients; and that “judgment should be tempered with mercy”— detailing the significant effects disbarment would have on his family.
*102 The Referee recommended disbarment. The Hearing Panel agreed with the Referee as to the charges sustained and the recommended sanction of disbarment, with one minor exception regarding the Referee’s finding that hardship to respondent’s family, particularly his two “young” sons (ages 15 and 18 at the time of the hearing), was a mitigating factor. The Panel noted that respondent’s wife is a teacher and respondent testified that she would like to go back to work.
This Court confirms the findings of fact and conclusions of law of the Referee and Hearing Panel as to liability and to impose the sanction of disbarment (see Matter of Alejandro, 65 AD3d 63 [1st Dept 2009], appeal dismissed 13 NY3d 788 [2009], lv denied 13 NY3d 714 [2009] [disbarment for conduct that included testifying falsely during deposition before DDC]; Matter of Fagan, 58 AD3d 260 [1st Dept 2008], lv denied 12 NY3d 813 [2009]; Matter of Truong, 22 AD3d 62 [2005]; Matter of Gadye, 283 AD2d 1 [1st Dept 2001] [disbarment for, inter alia, bad faith court filings, failure to advise of conflict of interest issues and participation in a fraud upon bankruptcy court]; Matter of Gelbwaks, 260 AD2d 47 [1st Dept 1999] [disbarment for collusion with client in bogus transfer of assets to evade creditor, bad faith bankruptcy filings, unauthorized disbursement of client funds, impermissible conflict of interest with client in a financial transaction]; Matter of Kramer, 247 AD2d 81 [1st Dept 1998], lv denied 93 NY3d 883 [1999], cert denied 528 US 869 [1999] [disbarment for pattern over several years of, inter alia, willful disobedience of discovery orders, and filing an unauthorized appeal and petition for rehearing after his discharge by client; disciplinary history and no remorse]).
Respondent’s contention that he has been unfairly blamed for the misconduct committed by disbarred attorney Mac Truong, and that disbarment is too severe of a sanction for whatever misconduct he engaged in as a result of his inexperience and lack of legal sophistication minimizes his misconduct. Respondent testified to his active participation in litigation that stretched over seven years in multiple courts. While he is correct that the Committee failed to produce a witness to testify that he conspired or colluded with Truong in the frivolous litigation, the record is replete with pleadings, motions and other filings which were drafted for the benefit of Truong and potentially disadvantaged his own client. Moreover, while the Referee determined that respondent was given some measure of authority to appear on behalf of the government of Vietnam, he *103 found respondent failed to inform his client clearly and completely of various actions he was taking on its behalf. Additionally, respondent testified falsely and did not express remorse for his misconduct. Contrary to respondent’s assertion that the Referee did not consider his evidence in mitigation, the Referee concluded that those factors did not “adequately mitigate” respondent’s intentional wrongdoing.
Accordingly, the Committee’s motion to confirm should be granted and respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York.
Mazzarelli, J.P., Friedman, Sweeny, Acosta and Andrias, JJ., concur.
Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.

 The Referee issued three reports due to the lengthy nature of the findings of misconduct.